UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

    QUALITY STORES, INC., et al.,

        Debtors.
_____/

UNITED STATES OF AMERICA,

        Defendant-Appellant,        Case No. 1:09-cv-44

v.        HON. JANET T. NEFF

QUALITY STORES, INC., et al.,

        Plaintiffs-Appellees.
_____/

## OPINION

This matter is before the Court on appeal from the Bankruptcy Court. Plaintiffs ("Quality Stores") commenced this adversary proceeding against defendant United States, seeking the refund of $1,000,125 in Federal Insurance Contributions Act[1] (FICA) taxes paid with regard to severance payments to former employees. The Bankruptcy Court, the Honorable James D. Gregg, entered a final judgment in favor of plaintiffs, determining that the payments made to the employees pursuant to the severance programs were not "wages" for purposes of FICA taxation. *See Quality Stores, Inc., v. United States* (*In re Quality Stores, Inc.*)*,* 383 B.R. 67 (Bankr. W.D. Mich. 2008). The United States appeals that decision.

---

[1] 26 U.S.C. §§ 3101-3128.

## I. Facts

This case was submitted to the Bankruptcy Court on stipulated facts ("Stip. Facts") for purposes of the parties' cross-motions for summary judgment. The facts, as set forth by the Bankruptcy Court, are not disputed on appeal:

> [T]he Debtors operated a chain of retail stores specializing in agricultural supplies and related products. During the period preceding the bankruptcy cases (the "Prepetition Period"), the Debtors were forced to close approximately sixty-three stores and nine distribution centers. The Debtors also terminated approximately seventy-five employees at their corporate office during the Prepetition Period.
>
> On October 20, 2001, an involuntary chapter 11 petition was filed against the Debtors. Quality Stores, Inc., answered the involuntary petition and consented to the entry of an order for relief on November 1, 2001. The remaining Debtors also commenced voluntary chapter 11 cases on November 1, 2001. After the petition date (the "Postpetition Period"), the Debtors closed their remaining 311 stores and three distribution centers. The Debtors also terminated all of their remaining employees.
>
> The Debtors made severance payments to employees who were terminated during both the Prepetition and Postpetition Periods. The parties agree that the severance payments were made "pursuant to [severance plans] maintained by the Debtors." (Stip. Facts ¶ 15.) The parties further stipulate that the severance payments were made "because of the employees' involuntary separation from employment," which resulted "directly from a reduction in force or the discontinuance of a plant or operation." (Stip. Facts ¶ 15.) The severance payments were included in the employees' gross income, and the Debtors reported the severance payments as wages on the W-2 forms issued to employees. The Debtors withheld federal income tax and the employees' share of FICA tax from the severance payments. The Debtors also paid the employer's share of FICA tax with respect to the severance payments.
>
> Under the Prepetition Severance Plan, the Debtors' senior executives received twelve to eighteen months of severance pay. All other employees received one week of severance pay for each full year of service. These payments were not connected to the receipt of state unemployment compensation and were not attributable to the rendering of any particular employment service. The severance payments were paid on a weekly or semi-weekly basis, in accordance with the Debtors' normal payroll period. Approximately $382,362 of the total refund requested in this adversary proceeding is attributable to severance payments made under the Prepetition Severance Plan.

Under the Postpetition Severance Plan, officers received six to twelve months of severance pay. Full-time salaried and hourly employees who had been employed for at least two years received one week of severance pay for each full year of service, up to a maximum of ten weeks for salaried employees and five weeks for hourly employees. Employees who had worked for the Debtors for less than two years received one week of severance pay, and the approximately 900 employees who were subsequently employed by the companies who purchased the Debtors' assets did not receive any severance pay. Like the prepetition severance payments, the postpetition payments were not connected to the receipt of state unemployment compensation and were not attributable to the rendering of any particular employment services. All severance payments for the Postpetition Period were paid in a lump sum. Approximately $617,763 of the total refund requested in this adversary proceeding is attributable to payments made under the Postpetition Severance Plan.

On September 17, 2002, the Debtors filed fifteen separate refund claims with the IRS, seeking to recover $1,000,125 in allegedly overpaid FICA taxes.[2] On June 1, 2005, the Debtors filed this adversary proceeding. The Debtors' complaint seeks to compel the IRS to turn over the alleged overpaid FICA taxes, plus interest, as property of the Debtors' bankruptcy estate. Because the issue presented in this adversary proceeding is a purely legal question, the parties filed stipulated facts and cross motions for summary judgment. Legal memoranda were filed, oral argument was held, and the court took the matter under advisement.

---

n. 2. This amount includes the employer's share of FICA taxes paid by the Debtors and the employees' share of FICA taxes for those employees who consented to permit the Debtors to make the refund request on their behalf.

---

II. Issue and Legal Rulings

This case presents a straightforward, but legally-confounding question: whether severance payments qualify as "wages" subject to FICA taxation. As framed by the United States, the more specific issue is whether the debtor is liable for FICA taxes on payments to employees upon their termination of employment because of the downsizing and subsequent closing of operations by their employer, even though the payments are not connected to or contingent on the recipients' eligibility for state unemployment compensation benefits (Def. Br. 7).

3

The few courts that have addressed this issue, or variations of it, have reached directly opposing outcomes. Where one court has found severance payments to be subject to taxation, the next has reached the opposite conclusion. The fact that the Internal Revenue Service has itself charted a path of "reverse-course" rulings on this issue since the 1950s only adds to the difficulties faced by the courts in attempting to reach a reasoned resolution by explaining and accounting for this repeated change in agency position.

To say that these differing rulings are simply the product of results-oriented decision-making is tempting, but unsupportable. The courts have not only diligently wrestled with the justification for their conclusions, but also endeavored to fashion some appropriate, logical framework for the analysis of this issue.

After a thorough consideration of the parties' arguments, the Bankruptcy Court concluded that the severance payments made to the employees pursuant to the Pre- and Postpetition Severance programs were not "wages" for purposes of FICA taxation. *Quality Stores,* 383 B.R. at 78. The Bankruptcy Court relied in part on the analysis and resolution of this same legal question by the Federal Court of Claims in *CSX Corp., Inc. v. United States,* 52 Fed. Cl. 208 (Fed. Cl. 2002). After the decision by the Bankruptcy Court, however, the United States Court of Appeals for the Federal Circuit reversed, in key part, the lower court's decision in *CSX*. *See CSX Corp. v. United States,* 518 F.3d 1328 (Fed. Cir. 2008). Given the reversal, the United States moved for reconsideration of the Bankruptcy Court's decision in this case. The Bankruptcy Court granted the motion for reconsideration, and on reconsideration, ratified its prior opinion and order.

Having now the benefit of these courts' prior efforts and analysis, this Court concludes that the severance payments at issue are not properly classified as "wages," and therefore, are not subject

4

to FICA taxation. Accordingly, the decision of the Bankruptcy Court is affirmed.

### III. Standard of Review

This case was before the Bankruptcy Court on the parties' cross-motions for summary judgment. The Bankruptcy Court granted summary judgment in favor of Quality Stores. On appeal to this Court from a bankruptcy court's final order or judgment, the bankruptcy court's conclusions of law are reviewed de novo. *Pierce v. Underwood,* 487 U.S. 552, 557-58 (1988)*; In re Rowell*, 359 F. Supp. 2d 645, 647 (W.D. Mich. 2004). Issues of statutory interpretation are questions of law, and are thus subject to review de novo. *ITT Indus. v. BorgWarner, Inc.,* 506 F.3d 452, 457 (6th Cir. 2007). The district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. FED. R. BANKR. P. 8013.

Federal Rule of Civil Procedure 56 governs summary judgment in bankruptcy court adversary proceedings. FED. R. BANKR. P. 7056; *In re Rowell*, 359 F. Supp. 2d at 647. Thus, the motion for summary judgment is properly granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

### IV. Analysis

The essential issue presented is whether the severance payments to employees/former employees of Quality Stores constitute taxable "wages" for purposes of FICA. There is no dispute that if the severance payments constitute "wages" for purposes of FICA, and if there is no applicable exception, then the severance payments are subject to FICA taxation, and neither Quality Stores nor the employees is entitled to a refund of the FICA taxes paid.

5

A. FICA Wages and Exceptions

1. Statutory Provisions

The United States contends that the severance payments at issue are "wages" for purposes of FICA and that no statutory exception applies to exclude them from taxation. Further, the payments do not qualify under the "supplemental unemployment benefits" exception set forth in guidance from the Internal Revenue Service because the severance payments were not conditioned on eligibility for or receipt of state unemployment benefits. *See* Rev. Rul. 90-72, 1990-2 C.B. 211; Rev. Rul. 56-249, 1956-1 C.B. 488. The United States contends therefore, that as a matter of law, the severance payments are subject to FICA taxation, and statutory provisions concerning the withholding of income tax under 26 U.S.C. § 3402(o) cannot be relied on to except the payments from the broad definition of wages under FICA.

"FICA, codified in Chapter 21 of the Internal Revenue Code, Sections 3101 through 3128, imposes a tax upon the wages of employees to fund Social Security and Medicare Benefits." *Appoloni v. United States,* 450 F.3d 185, 189 (6th Cir. 2006). For purposes of FICA, "wages" are defined as "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash." 26 U.S.C. § 3121(a); *Appoloni,* 450 F.3d at 189-90. "Employment" is defined as "any service, of whatever nature, performed [] by an employee for the person employing him …." 26 U.S.C. § 3121(b).

Section 3121 sets forth statutory exceptions to FICA's broad definition of wages, none of which are at issue here. However, the Internal Revenue Service has also published guidance based on its interpretation of the statute, which provides an exception to FICA for certain payments made by an employer, conditioned on eligibility for and receipt of state unemployment benefits, referred

to as "supplemental unemployment compensation benefits," or "SUB" pay. It is this agency exception that is the focus of the United States' argument.

## 2. Revenue Rulings

In a series of revenue rulings from 1956 to 1990, the IRS addressed whether payments from severance plans purporting to be SUB plans constituted "wages" under Chapter 21 (FICA) and Chapter 24 (income tax withholding) of the Internal Revenue Code. *See CSX Corp.*, 518 F.3d at 1334-40 (detailing the chronology and nature of the various rulings). Over the course of these rulings, the IRS has reversed its position on the tax treatment of supplemental unemployment compensation benefits.

"In 1956, the Internal Revenue Service issued a revenue ruling, Rev. Rul. 56-249, 1956-1 C.B. 488, in which the IRS took the position with respect to a particular SUB plan that SUB payments under that plan would not be considered 'wages' for purposes of FICA." *CSX Corp.*, 518 F.3d at 1335. The IRS issued additional rulings over the next several years. *Id.* In 1977, the IRS issued a revenue ruling dealing with SUB payments, again specifically determining that SUB payments were not "wages" for purposes of FICA and FUTA. *Id.* at 1337-38. "During the years between 1977 and 1990, the IRS issued a number of private letter rulings in which it approved various SUB plans, authorizing the employers to treat the SUB payments under those plans as non-wages." *Id.* at 1339. In 1989, the IRS announced that it would cease the issuance of private letter rulings concerning SUB payments pending further review of the issue. *Id.*

In 1990, the IRS issued Rev. Rul. 90-72. In this most recent guidance, the IRS concluded that SUB pay must be linked to the receipt of state unemployment compensation and must not be received in a lump sum in order to be excludable from the definition of wages for purposes of FICA

7

taxation and federal income tax withholding. Rev. Rul. 90-72, 1990-2 C.B. 211; *CSX Corp.*, 518 F.3d at 1339-40. "The IRS characterized Rev. Rul. 90-72 as 'restor[ing] the distinction between SUB pay and dismissal pay by re-establishing the link between SUB pay and state unemployment compensation' originally established in Rev. Rul. 56-249. 1990-2 C.B. at 213. As such, the 1990 revenue ruling stated that it was modifying the 1977 revenue ruling to the extent that the earlier ruling had allowed payments to qualify as SUB for purposes of FICA even when the payments were not tied to eligibility for state unemployment compensation." *CSX Corp.*, 518 F.3d at 1340.

### 3. 26 U.S.C. § 3402(o)

"During the 1960s, SUB payments were treated, for income tax purposes, as ordinary income to the recipient, but not as wages for purposes of either the income tax withholding statutes or FICA." *CSX Corp.,* 518 F.3d at 1336. Because SUB pay was not automatically subject to taxation as wages, and therefore, income tax withholding, employees who received SUB payments often encountered large income tax obligations at the end of the taxable year. *Id.* In 1969, at the request of the Treasury Department, Congress amended Chapter 24 of the Internal Revenue Code (income tax withholding statutes) to solve the problem of "under withholding" faced by taxpayers who received SUB pay. *Id.* The new tax withholding provision, 26 U.S.C. § 3402(o), ensured that SUB payments that were not deemed wages would be subject to income tax withholding by the employer. *Id.*

Section 3402(o) provides for income tax withholding on certain payments other than wages, including "any supplemental unemployment compensation," and certain annuity payments and sick pay. At the time of the enactment of § 3402(o), the Senate Committee report recognized that SUB payments were not subject to income tax withholding because "'because they do not constitute

8

wages or remuneration for services.'" *CSX Corp.,* 518 F.3d at 1336-37 (quoting S. Rep. No. 91-552, at 268 (1969), *as reprinted in* 1969 U.S.C.C.A.N. 2027, 2305). Accordingly, the amendment added language expressly stating the SUB payments "shall be treated as if it were a payment of wages by an employer to an employee for a payroll period."

Section 3402(o) provides:

1. General rule.--For purposes of this chapter (and so much of subtitle F as relates to this chapter)--

> (A) any supplemental unemployment compensation benefit paid to an individual,
> (B) any payment of an annuity to an individual, if at the time the payment is made a request that such annuity be subject to withholding under this chapter is in effect, and
>
> (C) any payment to an individual of sick pay which does not constitute wages (determined without regard to this subsection), if at the time the payment is made a request that such sick pay be subject to withholding under this chapter is in effect,

shall be treated as if it were a payment of wages by an employer to an employee for a payroll period.

For purposes of paragraph (1), § 3402(o) defines "supplemental unemployment compensation benefits" as:

> amounts which are paid to an employee, pursuant to a plan to which the employer is a party, because of an employee's involuntary separation from employment (whether or not such separation is temporary), resulting directly from a reduction in force, the discontinuance of a plant or operation, or other similar conditions, but only to the extent such benefits are includible in the employee's gross income.

26 U.S.C. § 3402(o)(2)(A).

Although § 3402(o) is contained within the income tax withholding statutes, it arguably informs the determination whether SUB payments are "wages" for purposes of FICA tax. "Congress chose 'wages' as the base for measuring employers' obligations under FICA, FUTA, and income-tax

withholding."[2] *Rowan Cos., Inc. v. United States,* 452 U.S. 247, 254 (1981). In *Rowan*, the Court considered whether Congress intended the term "wages" to have the same meaning for purposes of FICA, FUTA, and income-tax withholding. *Id.* at 254-55. The Court observed that from an historic perspective, these Acts "reveal a congressional concern for "the interest of simplicity and ease of administration.'" *Id.* at 255 (quoting S. Rep. No. 1631, 77th Cong., 2d Sess., 165 (1942) (Revenue Act of 1942)). The Court reasoned that Congress chose to base income tax withholding on the same measure, "wages," as taxation under FICA and FUTA, and specified that remuneration for certain services was excepted from "wages." *Id.* at 255-56.

Consequently, the *Rowan* Court rejected as invalid Treasury Regulations that did not implement the statutory definition of "wages" in a consistent or reasonable manner. *Rowan,* 452 U.S. at 263. "The plain language and legislative histories of the relevant Acts indicate that Congress intended its definition to be interpreted in the same manner for FICA and FUTA as for income-tax withholding." *Id.*

### 4. Decoupling Amendment

Following the decision in *Rowan*, Congress amended the Internal Revenue Code to add language to § 3121(a), often referred to as the "decoupling amendment," to allow for regulatory distinctions between exclusions in "wages" for income tax withholding and other taxation purposes:

> Nothing in the regulations prescribed for purposes of chapter 24 (relating to income

---

[2] "Congress defined 'wages' identically in FICA and FUTA, as 'all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash.'" §§ 3121 (a) (FICA), 3306 (b) (FUTA). For the purpose of income-tax withholding, Congress defined 'wages' as 'all remuneration (other than fees paid to a public official) for services performed by an employee for his employer, including the cash value of all remuneration paid in any medium other than cash.' § 3401 (a)." *Rowan,* 452 U.S. at 250 n.4.

10

> tax withholding) which provides an exclusion from "wages" as used in such chapter shall be construed to require a similar exclusion from "wages" in the regulations prescribed for purposes of this chapter. …

26 U.S.C. § 3121(a).

There is no dispute that the decoupling amendment applies to this case; however, the parties point to no regulations that have been promulgated to distinguish between the "wage" exclusions under consideration. Instead, the parties dispute whether, in light of the decoupling amendment, the reasoning in *Rowan*, remains controlling.

## B. Application

The United States argues that the payments made by Quality Stores to its employees are within the scope of § 3121 because the payments were made in connection with employment and were not conditioned on eligibility for state unemployment benefits as required under the exception set forth in Rev. Rul. 90-72. To the contrary, Quality Stores contends that SUB payments are not wages for income tax withholding purposes because they are not "remuneration for services," and they do not constitute wages for FICA taxation purposes because they are not "remuneration for service performed by an employee" (Pls. Br. 14). Instead, relying on § 3402(o), Quality Stores contends that for income tax withholding purposes, SUB payments are treated *as if they are wages*; thus, the Bankruptcy Court correctly held that the Severance Payments were not subject to FICA taxation.

As the Federal Circuit Court observed in *CSX*, "this issue of statutory construction is complex and [] the correct resolution of the issue is far from obvious." *CSX Corp.,* 518 F.3d at 1340. With all due respect to the Federal Circuit and its consideration of the issues, this Court is persuaded that the Bankruptcy Court was correct in rejecting the Federal Circuit's result in this case.

11

Quality Stores' analysis of the issues is convincing, and a contrary result can only be reached by a strained construction of statutes at issue.

As a general matter, "[i]n enacting the FICA provisions, Congress "intended to impose FICA taxes on a broad range of employer-furnished remuneration in order to accomplish the remedial purpose of the Social Security Act." *Associated Elec. Coop., Inc. v. United States,* 226 F.3d 1322, 1326 (Fed. Cir. 2000). Nonetheless, this purpose is not unlimited. The statutory enactments make clear that at some point a line is to be drawn on the taxation of employee financial benefits; otherwise, the benefits become the basis of the very taxes collected to return as benefits. That is, at one end of the spectrum are social security benefits and at the other end of the spectrum are wages/earnings, and at the point on the spectrum where severance payments are intended to serve the same purpose as social security benefits, i.e., support for workers in lieu of a lost ability to earn wages, the collection of social benefit taxes on the wage-replacement benefits makes little sense.

Only when the morass of seeming complex statutory enactments and regulations is considered in these terms do the taxation provisions become a coherent system anchored to the primary purpose of wage-replacement and social benefits. Having considered the parties' arguments and applied the statutory analysis in these terms, this Court is persuaded that the severance payments at issue are properly viewed as wage-replacement social benefits, not taxable remuneration for the employees' services or wages. Therefore, the severance payments are not subject to taxation for FICA purposes.

For purposes of FICA, "wages" are defined as "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash." 26 U.S.C. § 3121(a); *Appoloni,* 450 F.3d at 189-90. "Employment" is defined as "any service, of

12

whatever nature, performed [] by an employee for the person employing him …." 26 U.S.C. § 3121(b). However, under § 3402(o), "any supplemental unemployment compensation" is specifically excluded from the definition of "wages" for tax withholding purposes. As noted above, at the time of the enactment of § 3402(o), the Senate Committee report recognized that SUB payments were not subject to income tax withholding because "'because they do not constitute wages or remuneration for services.'" *CSX Corp.,* 518 F.3d at 1336-37.

> Section 3402(o) defines "supplemental unemployment compensation benefits" as:
>
> amounts which are paid to an employee, pursuant to a plan to which the employer is a party, because of an employee's involuntary separation from employment (whether or not such separation is temporary), resulting directly from a reduction in force, the discontinuance of a plant or operation, or other similar conditions, but only to the extent such benefits are includible in the employees gross income.

26 U.S.C. § 3402(o)(2)(A). Section 3402(o) expressly provides that supplemental unemployment compensation benefits, SUB pay, "shall be treated as if it were a payment of wages by an employer to an employee for a payroll period." 26 U.S.C. § 3402(o)(1).

The severance payments in this case meet the definition of "supplemental unemployment compensation benefits" in § 3402(o)(2). Contrary to the United States' argument, this Court finds no basis for concluding that § 3402(o) does not control the determination whether the severance payments at issue in this case are taxable for purposes of FICA. The reasoning in *Rowan* is instructive on this issue. The statutory definition of "wages" must be applied in a consistent or reasonable manner. *Rowan,* 452 U.S. at 263. There is no justification for differing interpretations of "wages" under FICA and the income tax withholding statutes.

Although following *Rowan*, Congress has provided for regulatory distinctions in "wages," pursuant to the decoupling amendment, no such regulations have been promulgated to distinguish

13

between the "wage" exclusions under consideration. As Quality Stores points out, Revenue Rulings do not have the effect of regulations. Thus, the Revenue Rulings, and in particular Rev. Rul. 90-72, relied on by the United States do not, pursuant to the decoupling amendment, mandate differing treatment of supplemental unemployment compensation benefits under FICA and the income tax withholding statutes, i.e., § 3402(o). Accordingly, despite the decoupling amendment, the reasoning in *Rowan* remains controlling, and Rev. Rul. 90-72 does not override the specific provisions of § 3402(o).

Having determined that § 3402(o) properly guides consideration of the severance payments in this case, the Court briefly addresses the Federal Circuit decision in *CSX* in which the court dismissed § 3402(o) as ultimately having no bearing on treatment of severance payments. *CSX Corp.,* 518 F.3d at 1341-42. The Federal Circuit concluded that the language in § 3402(o) expressly stating that SUB pay "shall be treated *as if it were a payment of wages* by an employer to an employee for a payroll period" does not necessarily imply that no such payments are in fact wages. *Id.* at 1342 (emphasis added).

The Federal Circuit reasoned as follows:

> To say that all payments falling within a particular category shall be treated as if they were a payment of wages does not dictate, as a matter of language or logic, that none of the payments within that category would otherwise be wages. For example, to say that for some purposes all men shall be treated as if they were six feet tall does not imply that no men are six feet tall. Moreover, section 3402(o) does not simply say that SUB payments shall be treated as wages; it provides that SUB payments shall be treated as if they were "a payment of wages by an employer to an employee for a payroll period." To say that certain payments do not constitute a payment of wages for a payroll period falls short of saying that the payments lack the legal character of "wages" altogether. In sum, the inference that CSX seeks to draw from the statutory language is simply too strained. Thus, while some supplemental unemployment benefit payments do not constitute "wages," it does not follow that all payments fitting within the broad definition of SUB in section 3402(o)(2)(A) are non-wages.[3] We therefore conclude that the text of section 3402(o) does not require

14

>   that FICA be interpreted to exclude from "wages" all payments that would satisfy the definition of SUB in section 3402(o)(2)(A).

*CSX Corp.,* 518 F.3d at 1342 (footnote omitted).

With all due respect to the Federal Circuit, it is the above analogy to six-feet tall men that strains logic and effectively ignores clear statutory provisions. If the underlying presumption in § 3402(o) was that SUB payments were both wages and non-wages depending on the particular case, that distinction could easily have been made in the statute. The clear import of § 3402(o) is that any payment meeting the definition of "supplemental unemployment compensation benefits" in § 3402(o)(2) is not considered to be "wages." Otherwise, the additional statement, "shall be treated *as if it were a payment of wages* by an employer to an employee for a payroll period" is not only unnecessary but also meaningless. That is, in the context of the above analogy, there is no need for an express statement that all men who *are* six-feet tall shall be treated *as if* they are six-feet tall. Similarly, if SUB pay already falls within the definition of "wages," there is no need to state that it shall be treated *as if it were* wages. If the SUB pay is already "wages," it is already subject to income tax withholding.

Accordingly, this Court agrees with the Bankruptcy Court that the Federal Circuit's decision in *CSX* does not undermine the reasoning or initial result reached by the Bankruptcy Court concerning the severance payments in this case.

## V. Conclusion

"Congress, by enacting FICA, intended to impose FICA taxes on a broad range of remuneration in order to accomplish the remedial purposes of the Social Security Act." *Appoloni,* 450 F.3d at 190 (citing H.R. Rep. No. 74-615, at 3 (1935) (describing the aims of the Social Security Act)). The limits on taxation, however, are not boundless, as Congress has made clear in numerous

statutory exceptions to FICA and FUTA taxation. This case involves severance payments "made 'because of the employees' involuntary separation from employment,' which resulted 'directly from a reduction in force or the discontinuance of a plant or operation.'" *Quality Stores,* 383 B.R. at 69 (citing Stip. Facts ¶ 15). The severance payments thus fall within the § 3402(o)(2) exception to wages for "supplemental unemployment compensation benefits." The severance payments are not taxable for purposes of FICA taxation, and the Bankruptcy Court did not err in so determining. The decision of the Bankruptcy Court is therefore affirmed.

An Order consistent with this Opinion will be entered.


DATED: February 23, 2010        /s/ Janet T. Neff
                                JANET T. NEFF
                                United States District Judge